## JACKSON v. JACKSON.

A deed to a wife, executed at the instance of the husband, will not be so modified or changed as to create a resulting trust in the husband, upon his petition praying that a resulting trust be decreed for his benefit, and that the deed to the wife be canceled as a cloud on his title, because the wife at the time of the execution of the deed represented to him in parol that she did not desire the title to the property, and would not exercise any dominion, control, ownership, or claim to it, which representations were false and fraudulent, and he having caused the deed to be made to his wife with a view to humoring her.

April 11, 1917.

Equitable petition. Before Judge Mathews. Bibb superior court. February 17, 1916.

George W. Jackson brought a petition against his wife, Mrs. Amelia C. Jackson, and alleged substantially as follows: They were married on December 6, 1891, and lived together as husband and wife until June, 1915. There are four children, all of age. At the time of the marriage the defendant had no property of any description, and since her marriage she has not accumulated or

earned any by her personal efforts. Plaintiff likewise had no property at the time of the marriage, but was industrious and thrifty in his habits, and during the 24 years of married life accumulated and saved certain real property valued at $7500, and four diamonds of the value of $1250, all of which were entrusted to the custody of the wife, plaintiff never parting with title to the same. He furnished his dwelling-house, occupied by them as a home, at an expense of $1500 or $2000. She would insist and entreat him to put all the property he would buy in her name, as a protection to himself and their children, assuring him that at any time he was in need, or his business was such that he had to convert any of his property into cash, she would raise no objection and would consent to a sale or mortgage of any or all of the property that might at that time be in her name, in order to meet his requirements. After she realized that all of his property was in her name, she manifested, on different occasions, an indifference to him, which later culminated in an open breach between the two, plaintiff in no wise contributing to or being responsible therefor. Her conduct became harsh as time progressed, until finally it was apparent that she was attempting to get rid of plaintiff and take to herself his property for which he had worked for 24 years. During the month of June, 1915, she conceived a scheme by which she thought she could get rid of him, and, with a view of carrying the scheme into effect, had a warrant sworn out, charging him with assault and battery upon her person. She prevailed upon their younger daughter to go with her to court and swear to the truth of the charge. The testimony of both was utterly false and without foundation in fact, and the commitment court rejected this evidence and immediately discharged the plaintiff. The defendant then employed counsel, who filed a petition for divorce and alimony, the petition being as yet undisposed of. A short time thereafter the defendant filed a petition praying for injunction against the plaintiff and their son, Frank Jackson, in which she alleged that she was in deadly fear of her life at the hands of plaintiff and her son, and prayed that they be restrained from occupying the home in which they had lived so many years, from holding converse with her, and from visiting the premises which had been bought and paid for with plaintiff's money—the defendant never having contributed one cent towards buying the same. Plaintiff

has never given defendant any cause for deserting him, for instituting the libel for divorce, for swearing out the warrant against him, or for any of the other acts of cruelty to which he has been subjected. He is wholly insolvent if he can not enjoy some of the property which is now in his wife's name. He is well advanced in years, and it is impossible for him at his age of life to again accumulate a competency. He is without remedy at law; wherefore he prays, for judgment declaring void all the deeds to the property described in the petition; that the title to the property be decreed in the plaintiff; that the defendant be required to turn over to him the diamonds of the value of $1250 which he has entrusted to her at various times; and that she be restrained from disposing of the title to any of the property, or encumbering or mortgaging it.

The defendant demurred to the petition generally and specially, which demurrer was overruled. The plaintiff amended his petition by alleging substantially as follows: The defendant knew that no gift of the property was contemplated or intended, or in fact made by the conveyance of title, and expressly disclaimed any desire to have and control the property as her own. She never at any time claimed any interest or title to the property, fully knowing that the property had never been given to her. When the property was purchased the deeds were made to her with a view to humoring her, yet with a distinct understanding that the beneficial or equitable title still remained in the plaintiff, he having never parted with it, or intended to part with it, all of which the defendant well knew. Plaintiff never delivered to her the deeds to any of the property, nor has she, so far as plaintiff is advised and believes, ever seen them. She did not know, until quite recently, of the several lots of land which had been purchased by plaintiff and the deeds taken in her name. From the date of the purchase of the property plaintiff has exercised exclusive control and dominion over it, claiming title openly, making contracts relatively to it, making improvements thereon, insuring it and returning it for taxes in his own name, making contracts for its rental and receiving the rents, no portion of the rents nor the proceeds from the property ever having been paid over to or claimed by the defendant. She induced and persuaded plaintiff to have deeds to the property made in her name as he would purchase it, by representing to him that she did not desire the title to it and would

not endeavor to exercise any dominion, control, ownership, or claim to it; all of these representations being false and fraudulent, and made with a view of deceiving, misleading, and defrauding him. When she ascertained that all of his property was in her name, then it was that she concluded, contrary to her representations and promises and with a view of defrauding plaintiff, to claim title, both legal and equitable, all of which constitutes fraud on him. He prays that a resulting trust in all the real estate described in the petition be decreed in him; and that all the deeds and evidences of title in the defendant be canceled as constituting a cloud on plaintiff's title, because the deeds have answered the object of their creation, and are calculated to subject him to further liability and present annoyance, the cancellation being necessary to his personal protection. The defendant renewed her demurrer to the petition as amended. It was overruled, and she excepted.

*Wallace Miller* and *Charles H. Garrett,* for plaintiff in error.

*W. D. McNeil* and *W. A. McClellan,* contra.

HILL, J. (After stating the foregoing facts.) This case is to be decided on the petition and demurrer. A case of implied or resulting trust is not created under the facts of this case. And the decision in *Wilder* v. *Wilder,* 138 *Ga.* 573 (75 S. E. 654), is not applicable, as contended. There the mother bought the land with her own funds, and caused the title to be made to her son under an agreement that the property was to be hers and the son would make to her such conveyance as she might require. Here, it is true, the husband purchased the land with his money, and the deeds were made by the vendor to the wife under parol representation by the wife to the husband that "she did not desire the title to the same, and would not exercise any dominion, control, or ownership, or claim title to it." But the deeds, so far as appears, were absolute deeds of gift as between the husband and wife, and they can not be cut down by implication into a trust because of the parol promise or agreement of the wife to the husband at the time of the execution of the deeds. See *Vickers* v. *Vickers,* 133 *Ga.* 383 (65 S. E. 885, 24 L. R. A. (N. S.) 1043). Nor can the deeds made to the wife, under the facts of this case, be canceled and the title decreed to be in the husband. To allow this to be done would be to substitute an entirely different contract from the written one made and entered into between the parties to the case. As was

well said by Mr. Justice Evans in *Vickers* v. *Vickers,* supra, "An absolute gift can not, by events transpiring after it is made, be metamorphosed into a trust. Equity will not allow a donor to reclaim property, the title to which he has unconditionally placed in another, merely because he has had a quarrel with the donee." We think the court erred in overruling the demurrer.

*Judgment reversed. All the Justices concur.*