John Fulton and Wife, plaintiffs in error, vs. Jesse Smith et. al., defendants in error.

[1.] The misjoinder of a party, may be obviated by an amendment; therefore, it is not a ground for dismissing the bill.

[2.] A father made advancements to his sons, when he was not in a sound state of mind. The sons and the daughters agreed, that the advancements should be set aside, and the father's property, including the advanced property, divided out among the sons and daughters, with an advantage to the sons each, of $1000.

Held, that there was a sufficient consideration for this agreement.

[3] Such an agreement is not against public policy.

In Equity, from Houston county. Decision on demurrer, by Judge Lamar, at October Term, 1858.

This bill was filed by John Fulton and wife, against William P. Gilbert, executor of William Smith, deceased, Thomas Pollock, administrator of Risden Smith, deceased, M. S. Burney, administrator of Needham Smith, deceased, and the widow of said Needham, who was the daughter of the testator, William Smith, deceased, Alexander Smith, Josiah Hodges and wife, Garat Smith, and Jesse Smith, to compel

the specific performance of an agreement, made by and between all the above named parties, except Gilbert, relative to the disposition of the estate of said William Smith, *their father*, to be effected and carried out after his death.

The bill alleges that William Smith, the father, being old and infirm both in mind and body, and yielding to the importunities of some of his children, gave off to some of them, the bulk of his estate. That to save trouble and the expense of litigation, and to settle matters amicably, his sons and sons-in-law, on the 27th November, 1847, met together, and entered into an agreement in writing, under seal, wherein it was recited and agreed, as follows:

" That whereas the said William Smith, desirous of releasing himself of the care and management of his estate, has divided the same among us, his heirs, by deed and otherwise, giving some decidedly the advantage of others, which we believe was not his intention when he was of a sound and disposing mind and memory. And we, wishing not to cross him, and consequently disturb the few remaining days of his stay on earth, do hereby bind ourselves, our heirs and assigns, to abide by the following agreement.

" First, that we receive the personal property, deeded as above stated, having the same valued by three disinterested persons, at the valuation. And that the three lots of land, deeded to Risden Smith recently, return to the estate, only reserving to said Risden the use of the houses, and so much of the land as he may wish to cultivate during the lifetime of our father, the said William Smith, and one year thereafter, should he die in the latter part of the year, so as not to give the said Risden time to improve his own land so as to be able to make a crop on the same, the residue of the plantation to be rented if opportunity offer, and the revenue to belong to the undivided part of the estate. And after the death of our father, each of us to render in on oath, all that we have heretofore received, as well as all we may hereafter receive from our father, in land, negroes, money, notes, or any other thing,

the value to be estimated at the time of reception; and should we be unable to agree on valuation, we will refer the same to three' disinterested persons, whose decision shall be final and binding on all. And after ascertaining what each has received, then they that have not received as much as those that have received most, shall receive of the undivided part of the estate, until all are equal, (only reserving to the male heirs one thousand dollars advantage of the females) and the residue if any, to be equally divided among all.

"And should the residue or undivided estate not be sufficient to bring up all equal, then those who have received most are to pay over to those that are minus, until all are equal, except the thousand dollars in favor of the males as above reserved.

"In witness whereof, we have affixed our hands and seals, this, the 27th November, 1847."

The bill further states, that all the persons signing said agreement, except plaintiff and wife, who was a daughter of said William Smith, received large amounts of property in money, over and above their equal share, as mentioned in said agreement, and that they refuse to account for the same and pay over any part thereof to plaintiff and wife, or to abide by their said agreement.

The bill further states, that the said William Smith, (the father) made his last will and testament, while in a state of imbecility, appointing said Gilbert his executor, who upon the death of said William, propounded said will; that the same was admitted to probate, and Gilbert qualified as executor thereof.

The bill prays, that an account be taken of all the property advanced to, and received by, each child, and to set up and enforce said agreement, &c.

To this bill defendants demurred.

1st. Because it is multifarious, in joining Gilbert, the executor of William Smith, deceased, as a party defendant, with the parties to said alleged agreement.

2d. Because said agreement set out in the bill, is without consideration and purely voluntary.

3d. Because the bill seeks to enforce an agreement that is contrary to good morals and public policy, in this, that it had its inception in a design and effort on the part of the children, clandestinely to defeat and thwart the wishes of their parent in his lifetime, touching the disposition of his property.

4th. Because the bill seeks to transfer from the Ordinary, a question, belonging exclusively to that jurisdiction, to the Court of Equity, touching the intestacy of William Smith, deceased.

5th. Because it seeks to usurp the jurisdiction of the Ordinary, in trying the validity of the will of William Smith in a Court of Equity.

The Court sustained the demurrer and dismissed the bill, and counsel for plaintiffs excepted.

STUBBS & HILL, for plaintiffs in error.

WARREN & GOODE, contra.

By the Court.—BENNING J. delivering the opinion.

Was the Court right in sustaining the demurrer to the bill ?

The first ground of the demurrer, was, that Gilbert, the executor of Smith, the elder, was improperly joined with the other defendants, in the bill.

[1.] This was a good ground, unless Gilbert had in his hands, some of the property covered by the agreement. It does not appear whether he had, or not. Therefore, he must be struck from the bill, unless a statement shall be added to the bill, that he has in his hands, some of the property covered by the agreement. But objections of this sort, are not sufficient to justify the dismissal of a bill. They are subject to be obviated, as a matter of course, by amendment.

Fulton and wife vs. Smith, et. al.

[2.] The second ground was, that the agreement was without consideration.

But we think it, not true that the agreement was without consideration. The sons were, by the agreement, to have, by $1,000, the advantage over the daughters in the father's estate. There was sufficient cause for setting aside the advancement, made by the father, to the sons. These set aside, the sons and daughters would have shared equally in the father's estate. The agreement in effect stipulated, that the daughters should pay to each of the sons, $1,000, for relinquishing the advancements. This was ample consideration to the *sons.*

The sons were in possession of the property advanced to them by the father; of most of it, under deeds from the father. This gave to the sons a great advantage over the daughters, in respect to this advanced property. And the only way open to the daughters, to overcome this advantage, was by a suit at law or in equity. And, to the carrying through of such a suit, considerable expense to the daughters, would be necessary—expense of money, in the payment of lawyers, fees—expense of time and labor, in the attendance of them, or their husbands, on the Court, and in the preparation of the case. This expense, the agreement saved to the daughters. And that was a sufficient consideration to *them* (or their husbands) to enter into the agreement.

We think, then, that it is not true, that this agreement, was without a sufficient consideration.

Indeed Courts of Equity hold, that in all family agreements of this kind, there is a sufficient consideration to support them, whether that consideration be obvious or not. *Watkins vs. Watkins,* 24 *Ga.*

[3.] We do not agree at all, with the third ground of the demurrer. We think, that the agreement was in accordance with, rather than "contrary to, good morals, and public policy."

[4.] The daughters, it is true, did not by the agreement, get full justice ; but, it is also true, that they came much nearer to getting it, than they would have come, had things remained as they were before the agreement. And, as to the thwarting of the father's wishes—he had no wishes when he made the advancement, for then, he was not " of a sound and disposing mind and memory." Natural justice, as well as our statute of distributions, puts all a man's children on an equality, with respect to the property which he leaves behind him, when he dies.

The object of the bill, is merely to compel the specific performance of the agreement ; nothing more. Therefore, the last two grounds of the demurrer, are not true in fact.

Thus then, it appears, that, in our opinion none of the grounds of the demurrer, was good. We, must hold, therefore, that the Court erred in sustaining the demurrer.

ᴏ                                    Judgment reversed.